David Lopez (DL-6779)
LAW OFFICES OF DAVID LOPEZ
171 Edge of Woods Rd., P.O. Box 323
Southampton, NY 11969-0323
Tel:   631.287.5520
Fax:  631.283.4735
email: DavidLopezEsq@aol.com

Miriam Tauber (MT-1979)
MIRIAM TAUBER LAW PLLC
885 Park Ave. 2A
New York, NY 10075
Tel:   323-790-4881
email: MiriamTauberLaw@gmail.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK RUBENSTEIN,<br><br>    Plaintiff,<br><br>v.<br><br>KNIGHT-SWIFT TRANSPORTATION HOLDINGS INC.,<br><br>    Nominal Defendant,<br><br>and<br><br>JERRY C. MOYES and VICKIE MOYES,<br><br>    Defendants. | No. 19-cv-7802-KPF<br>(ECF Case) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO
REARGUE DIMISSAL OF CLAIM I OF HIS FIRST AMENDED COMLAINT
OR FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

1

## OVERVIEW

In deciding a motion under Rule 12(b)(6) a court is to accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff and decide whether the plaintiff has plausibly pleaded a valid claim for relief. *E.g. Ashcroft v. Iqbal,* 356 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).

The rub in this formulation is that a mortal stands between the pleaded facts and a determintion of what inferences are "reasonable". If the subject of the complaint is, for example, the effect of tonality on meaning in spoken Mandarin, or best practices for chelating gadolinium, many an inference intuitively obvious to the cognoscenti may be beyond the spontaneous understanding of we mere mortals. We respectfully suggest that this twist may lie at the heart of the court's dismissal of the First Claim of the complaint. Here, the susceptibility of the re-pricing of a repurchase agreement. a "repo", to speculalation in the common shares underlying it – to gambling on the markets through a repo -- is the arcane subject of discussion.

As was the case with plaintiff's main brief in opposition to the motion to dismiss, we go a bit afield in search of instruction. In plaintiff's main brief, at what we took to be Your Honor's allowance, we ventured to touch on quantum mechanics and mind games – Schroedinger's cat. Here, on a lighter note, we seek the guidance of Mr. Kenny Rogers who gives it to by way of four lines of lyric from his pop song, *The Gambler*.

> You've got to know when to hold 'em, know when to fold 'em,
> Know when to walk away, know when to run,
> You never count your money when you're sittin' at the table,
> There'll be time enough for countin' when the dealin's done.
>
> *The Gambler*, lyrics, © Sony TV Music Publishing L.L.C.

## DECISIONAL STANDARDS

### On A Motion For Reconsidertation Or Amendment

F.R.C.P. Rule 15(a) allows leave to amend "when justice so requires". *Chechele v. Scheetz*, 2011 WL 3837125, at *7 (S,D.N.Y., August 30, 2011). Under F.R.C.P. Rule 59(e) and Local Civil Rule 6.3, a party may move to "alter or amend" a judgment, and for "reconsideration or reargument", Loc. Civ. R. 6.3. We do not address a matured judgment but rather the court's opinion and order of September 30, 2020, dismissing the First Claim For Relief. If not disturbed it will move unimpeded down the path to judgment and so, in addition to the liberal standard of Rule 15(a) F.R.C.P., we address the same more stringent decisional standard that would be appropriate to the court's opinion and order in its ripened form.

Motions under Rule 59(e) and Local Civil Rule 6.3, are disfavored or, in the words of the cases, "narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been *thoroughly considered* by the court." [Emphasis added], *Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc.*, 01 Cv. 3796, 2005 WL 3440704, *3, 3005 U.S. Dist. LEXIS 33131, *9 (S.D.N.Y Dec. 15, 2005), (quoting *Range Road Music, Inc.*, 90 F. Supp. 2d 390, 301-92 (S.D.N.Y. 2000). "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words that might reasonably be expected to alter the conclusion reached by the court". *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d. Cir. 1995)) (finding that district court did not abuse its discretion in reconsidering its earlier ruling where movant introduced "additional relevant case law and legislative history"; *accord*, *Chamberlin v. Principi*, 2006 WL 647785, *1, 2006 U.S. Dist. LEXIS 10254, * 1 -2 (S.DN.Y., Mar. 15, 2006); *Commerce Funding Corp.*, 2005 WL 3440704 t *3, 2005 U.S. Dist, LEXIS

33131 at *10. "The controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the court in the underlying motion." *Commerce Funding Corp*, 2005 WL 3440704 at *4, 2005 U.S. Dist. LEXIS 33131 at * 11.

"Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories ... or otherwise taking a 'second bite at the apple'". *Sequa Corp. v. GBJ Corp.*, 156 F. 3d 136, 144 (2d Cir. 1998); *accord, Chamberlin*, 2006 WL 647785. at * 1, 2006 U.S. Dist. LEXIS 10254 at * 2; *Commerce Funding, supra.* At *3, at 10 -11.

But "a motion for reconsideration may be granted to correct a clear error or prevent 'manifest injustice.'" *Chamberlin v. Principi, supra* at * 1. (quoting *Virgin Atlantic Airways Ltd. v. Nat'l Mediation Bd.*, 956 F. 2d 1245, 1255 (2d Cir. 1992). It is to correct clear error or prevent manifest injustice that plaintiff moves for reconsideration or for leave to amend.

## On Deciding The Applicability Of The Unorthodox Transactions Doctrine

A plain vanilla transaction in shares under Section 16(b) is one involving a simple exchange of cash for shares. A brokerage transaction or a face-to-face purchase and sale of shares will fit the bill. These transactions are mechanically swept within the purview of Section 16(b) without further examination and with strict liability. *Smolowe v. Delendo Corp.*, 136 F.2d 231 (2d Cir), cert denied, 320 U.S.751 (1943).

Transactions of a more complicated sort, which include transactions in derivatives, can require a more analytical approach to determine whether they are subject to the statute.

> "In deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent – the realization of short-swing profits based upon access to inside information...."

*Kern County Land Company v. Occidental Petroleum Corp.*, 411 U.S. 582, 600-601 (1973).

The criteria by which a borderline transaction is determined to be within or without the reach of the statute are: a) whether the insider had control over the terms and timing of the transaction; and b) whether there was "a possibility of speculative abuse, not its proven actuality". Id. Proof of the actual employment of inside information in making a transaction is never a part of Section 16(b) jurisprudence. *Analytical Surveys, In. v. Tonga Partners, L.P.*, 684 F. 3d 36, 46 (2d Cir. 2012); *Huppe v. WPCS International Inc.*, 670 F. 3d 214, 219 (2d Cir. 2012); *Kay v. ScienTex Corp.*, 486 F. 2d. 340, 352 (4th Cir. 1973); cert. denied, 419 U.S. 873 (1974), *Morales v. Gould Investors Trust*, 445 F. Supp. 1144, 1154 S.D.N.Y. 1977).

Dealings in derivative securities are often treated as "unorthodox" and subject to analysis as to whether by their potential for abuse of position they can come within the reach of the statute. Plaintiffs agree that such an inquiry is appropriate here.

There is no issue about the voluntary nature of the December 21, 2018, termination and re-issuance or the ability of the Moyes to control its timing or content. The markets had turned against them and they stood to suffer substantial losses if they did not do something. There is nothing in the complaint to suggest that it was other than their choice to remain in the game and stand another deal on new terms. And they have not suggested otherwise.

We read Your Honor's Opinion to indicate that Your Honor decided the facts as pleaded, on the materials available to the court, did not allow the inference of an opportunity for speculative abuse in the re-casting of December 21, 2018, largely because the re-pricing of shares remaining subject to the new repo option had a higher exercise price that the original repo. We respectfully submit that for one who, in the circumstances, "knows when to hold 'em and

knows when to fold 'em", the pleaded facts are sufficient to make the inferences needed to sustain the complaint. If we are wrong, we ask leave to amend the complaint to lay the ancillary facts out in greater detail with a step-by-step narrative and roadmap of their significance. We do not seek to make new arguments. We seek to make our prior arguments more understandable.

## FACTS

The facts of the case are known to the court and were laid out in its opinion of September 30, 2020. Those of the facts particularly salient to this motion are:

1. At November 16, 2017, the Moyes, through Cactus II, owned or held ownership claims, *inter alia*, to 4,868,208 shares of the common stock of Knight-Swift which they sold to Citigroup Global Markets ("CGMI"), taking in exchange a payment of $125,000,000 and an option to reacquire the shares at a price of $25.68 per share (*Order at 3; Compl. Par. 6*)

2. The option could be exercised by the Moyes at any time. At maturity it was to become a put against them making reacquisition mandatory. (*Order at 3; Compl. Par. 6*).

3. Not pleaded but available to the court on the motion through judicial notice of reliably reported market data, F.R.E. Rule 201, is that during many weeks prior to December 21, 2018, the open market price of Knight-Swift common stock, on a closing price basis, trended downward. On December 21, 2018, it closed at $23.66, the lowest it had been since the November 16, 2017 Initial Repo entry date when it had been at $38.84. Any exercise of the reacquisition option by the Moyes then,

voluntarily or mandatorily, call or put, would have resulted in a substantial loss to them.

4. On December 21, 2018, the Moyes, with the consent and cooperation of CGMI, caused the open market sale of 1,537,205 shares and the application of the proceeds of sale to a reduction of their obligations under the Repo; they made an additional payment to CGMI in cash; and, to the same end, in the form of an increased exercise price for the remaining shares subject to the New Repo, *(Order at 4 n.3, Citing Pl. Opp. Brf. At 15-16.)*

5. On December 21, 2018, a new Repo covering 3,331,003 shares was entered into with an option exercise price of $26.23 per share.

### POINT I

### THE FIRST AMENDED COMPLAINT PRESENTS ALL FACTS NECESSARY, IF ALL INFERENCES ARE MADE IN THE PLAINTIFF'S FAVOR RELYING UPON SOURCES RECEIVABLE BY THE COURT ON A MOTION TO DISMISS, TO IDENTIFY A PLAUSIBLY PLEADED PURCHASE OF SHARES ON DECEMBER 21, 2018.

The Moyes, in the lyric words of *The Gambler*, "kn[e]w when to hold 'em, kn[e]w when to fold 'em, knew when to walk away, knew when to run". More prosaically, they assessed their risk exposure and adjusted it through reduction and re-pricing. Note that the lyrics emphasize knowing. The essence of gambling is luck but luck favors the knowing. If the Moyes, through their presumed access to inside information, had reason to believe that the market for Knight-Swift stock would rise following December 21, 2018, then their actions on that day were perfectly rational and could have been guided by inside information even if the exercise price of the option increased. We emphatically declare, capital letters and boldface type:

## WE DO NOT ACCUSE THE MOYES OF
## ACTUALLY MISUSING INSIDE INFORMATION.

There is no reason for us to. The presence of a possibility of misuse in the type of transaction they engaged in is all that is needed for their actions to come within the statute's reach.

Discard. Reprice. Ante up more cash. Call for a new deck. Call for a shuffle. Stand another deal. Don't walk away. Don't run. Don't count your money when you're sittin' at the table. There'll be time enough for countin' when the dealin's done.

The fact that the re-pricing was an increase in exercise price and that no reported decision has yet considered this fact pattern is no negation of plaintiff's arguments. It merely means this is a case of first impression. Gambling is a complex and dynamic activity and if access to inside information has the potential to inform a participant that staying in the game at longer odds may still pay off, then the statute is still in play. The possiblily of abuse of inside information is in play.

The court may note through judicial notice that Lady Luck did smile upon the Moyes. They enjoyed the good fortune of having the open market price of Knight-Swift shares rise by January 4, 2019 – 9 market days later – to a closing price of $26.18, a nickel lower that the new exercise price. The share price continued to climb through a closing price of $35.73 on April 24, 2019, the high point within six months of the re-priced New Repo entry. That is 136% higher than the New Repo exercise price. Never once in the days following January 4, 2019, did the closing market price of Knight-Swift shares drop below the fortuitous re-pricing of the Repo exercise price of December 21, 2018. And that price movement continues to this date, shares having closed as high as $46.72 – 178% higher than the re-pricing – on August 21, 2020. Never once, not for a single day nor for a single moment intraday during those roughly 20 months, has the market price fallen below the exercise price under the New Repo. (All market pricing data is

7

taken from Exhibit A to the proposed Second Amended Complaint, a daily tabulation of pricing data for Knight-Swift common stock on the New York Stock Exchange during referenced periods.)

The difference between the re-negotiated option exercise price of $26.23 and the high open market price within six months of $35.73 is $9.50. Multiplied by the reduced number of shares subject to the new option – 3,331,003 – that differential yields an increase to the value of the Moyes' position, had they maintained it, of $31,644,528. Measured to the high point beyond six months of $46.72 on August 21, 2020, the differential is $20.49 with the Moyes' position, had they maintained it, increasing in value by $68,252,251.

The scientific method – basically an exercise in applied logic – calls for the positing of a hypothesis and its subsequent proof or disproof through the generation, gathering and organization of data. The hypothesis here is that the December 21, 2018, re-pricing of the Moyes' repo option *could have been* instructed by access to inside information concerning unannounced company developments that would propel the stock price upward. Proof of the actual employment of such information is no part of the inquiry. The empirical record of actual open market trading of those shares in the six months following the re-pricing validates that hypothesis and names the re-pricing a purchase.

### POINT II.   IF THE FIRST AMENDED COMPLAINT IS DEFICIENT IN ITS PRESENTATION OF FACTS SUPPORTING THE FIRST CLAIM, AMENDMENT SHOULD BE ALLOWED TO PREVENT CLEAR ERROR OR MANIFEST INJUSTICE.

Plaintiff suggests that there are two possible courses for the court to avoid clear error or manifest injustice. It may reconsider the arguments and materials available to it on the motion

making all inferences, including those it may make by taking judicial notice of market activity, including those suggested at Point I, in plaintiff's favor, and declare that the complaint adequately alleges the cancellation and re-issuance of the Repo on December 21, 2018, to have been a purchase of shares by the Moyes. Or it may permit Plaintiff to amend his complaint to spread out the inferences he contends should properly be made in his favor. Of the two choices amendment may be the preferable course to make explicit what is now available only inferentially.

Rule 15(a), F.R.C.P., allows liberal amendment and supplementation in the interests of resolving cases on the merits. *Forman v. Davis,* 371 U.S. 178, 181-182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Rule 15(a)(2), F.R.C.P. instructs the court to "freely give leave when justice so requires." Moore's Federal Rules Pamphlet, p. 206. Plaintiff has demonstrated in this brief the merits of his Claim I. If his counsels' presentation in the First Amended Complaint was inartistic or inadequate, amendment may be the simplest and most effective way to remedy those defects. Issue has not yet been joined and plaintiff's request will not materially delay the progress of the case.

The defense has informed plaintiff's counsel, and we inform the court, that they will not consent to amendment.

Exhibit A hereto is a proposed Second Amended Complaint. The only changes from the First Amended Complaint as considered by Your Honor in your opinion of September 30, 2020, appear at paragraphs 15 through 30. Subsequent paragaphs have only been renumbered.

## CONCLUSION

Plaintiff urges that the First Amended Complaint, as considered by the court in its opinion of September 30, 2020, adequately alleges that the recasting of the Moyes' repurchase agreement on December 21, 2018, reducing the number of subject shares, providing an additional cash payment to the counterparty and repricing the option exercise upward for remaining shares, was a purchase of those remaining shares, all reasonable inferences being made in plaintiff's favor relying on materials available to the court on a Rule 12(b)(6) motion including those available by judicial notice.

Should the court disagree or judge a repleading to be the better way of clarifying the record, then plaintiff asks for leave to replead a Second Amended Complaint substantially in the form appended.

Dated: Southampton, New York
October 22, 2020

s/ David Lopez
David Lopez, (DL-6779)
Miriam Tauber (MT- 1979)
*Attorneys For Plaintiff*
