UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK RUBENSTEIN,<br><br>      Plaintiff,<br><br>      -v.-<br><br>KNIGHT-SWIFT TRANSPORTATION HOLDINGS INC.,<br><br>      Nominal Defendant,<br><br>JERRY C. MOYES and VICKIE MOYES,<br><br>      Defendants. | 19 Civ. 7802 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

  By Opinion and Order dated September 30, 2020, the Court granted in part and denied in part Defendants' motion to dismiss. *See Rubenstein* v. *Knight-Swift Transp. Holdings Inc.*, 492 F. Supp. 3d 206 (S.D.N.Y. 2020). As relevant to the instant motion, the Court denied the first of Plaintiff's two claims of violations of Section 16(b) of the Securities Exchange Act of 1934 (the "Act"), *as amended,* 15 U.S.C. § 78p(b), concluding that the partial termination of a repurchase agreement in December 2018 did not comprise, in whole or in part, a "purchase" transaction for Section 16(b) purposes. Now before the Court is Plaintiff's motion for reconsideration of the Court's decision or, in the alternative, for leave to amend. (*See* Dkt. #49, 53 (Plaintiff's opening submissions); *see also* Dkt. #50-51 (Defendants' opposition submissions); Dkt. #52 (Plaintiff's reply)). For the reasons set forth in the remainder of this Opinion, the Court denies both of Plaintiff's applications.

### A. The Court Denies Plaintiff's Motion for Reconsideration[1]

#### 1. Applicable Law

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)).  Under Local Rule 6.3, the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (noting that the standard for granting motions for reconsideration is "strict"); *accord Van Buskirk* v. *United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

Compelling reasons for granting a motion for reconsideration are limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted); *accord Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013). A motion for reconsideration is "not a vehicle for relitigating old issues,

---

[1]  The Court refers to Plaintiff's First Amended Complaint as "FAC" (Dkt. #25); to Plaintiff's opposition memorandum to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #35); to the Court's Opinion and Order of September 30, 2020 as the "September 30 Opinion" or "Op." (Dkt. #42); to Plaintiff's memorandum in support of his motion for reconsideration or leave to amend as "Pl. Recon. Br." (Dkt. #49); to Defendants' memorandum in opposition as "Def. Recon. Opp." (Dkt. #50); and to Plaintiff's reply memorandum as "Pl. Recon. Reply" (Dkt. #52).

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *accord In re Furstenberg Fin. SAS*, 785 F. App'x 882, 886 (2d Cir. 2019) (summary order) ("Because a party may not advance new arguments or requests for relief in a motion for reconsideration if they were 'not previously presented to the Court,' *see Nat'l Union Fire Ins. Co. of Pittsburgh* v. *Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (internal quotation marks omitted), the district court did not abuse its discretion in denying the request.").

### 2. Analysis

The Court presumes familiarity with its September 30 Opinion, including in particular its analysis of the partial termination of the Early Repo on December 21, 2018, and its conclusion that neither the partial termination nor the correlative increase in the settlement price of the remaining shares covered by the Early Repo implicated a qualifying "purchase" under Section 16(b). (*See* Op. 3-4, 17-25). In light of the Court's analysis, there is merit to Defendants' argument that the instant motion for reconsideration is improper because Plaintiff has identified neither legal authorities nor facts that the Court overlooked or that would alter the Court's decision. (Def. Recon. Opp. 1).

In response to Defendants' motion to dismiss, Plaintiff had argued to the Court that under cases such as *Analytical Surveys* and *Greenberg* v. *Hudson*

3

*Bay Master Fund Ltd.*, No. 14 Civ. 5226 (DLC), 2015 WL 2212215 (S.D.N.Y. May 12, 2015):

> Defendants' re-establishment of the settlement price associated with their call equivalent position with respect to the outstanding 3,331,003 shares subject to the Repo constitutes the acquisition by Defendants of a new call equivalent derivative position, and is treated as a Section 16(b) purchase by the Defendants of the underlying securities, on the date of the New Repo transaction.

(Pl. Opp. 16). The Court reviewed these cases and others like them, distinguished the cases on their facts, and concluded that the law was to the contrary. (*See* Op. 20-25; *see also id.* at 24 ("Plaintiff has not cited, and the Court has not found in the case law or relevant secondary sources, any case in which an increase in the exercise price, and correspondingly a decrease in the call equivalent position, has been deemed a purchase. Indeed, Rule 16b-6(a) is explicit that a decrease in a call equivalent position is a deemed sale.")).

In his motion for reconsideration, Plaintiff does not rely on new cases or new facts. To be sure, there is reference to historical price and volume data for the common stock of Knight-Swift Transportation Holdings Inc. ("Knight-Swift") — of which Plaintiff suggests the Court could have taken judicial notice *sua sponte* in its September 30 Opinion — but such information merely provides a layer of detail on existing price allegations in the First Amended Complaint and in Plaintiff's opposition to Defendants' motion to dismiss. (*Compare, e.g.*, FAC ¶¶ 15, 16, 31, 42, *with* Pl. Opp. 20-23, *and with* Pl. Recon. Br. 7-8). The true focus of Plaintiff's reconsideration motion is on presenting new arguments for Section 16(b) coverage of the partial termination of the

4

Early Repo and the resetting of the per-share repurchase price. Plaintiff's failure to raise these arguments earlier is itself a sufficient basis to deny reconsideration. As it happens, however, the arguments also fail on the merits.

To review, in response to Defendants' motion to dismiss, Plaintiff had argued that "[a] single instrument or event in the Section 16(b) context can express, or superimpose, numerous derivative positions, along with outright purchases or sales of stock without requiring resolution into a single state." (Pl. Opp. 7; *see also id.* ("Under the SEC's derivative Rules, the Section 16 transaction occurs when the parties agree to any number of potential future securities transactions, without regard to the terms on which shares are eventually transferred, or whether shares are transferred at all. The same securities can be both purchased and sold under a single agreement.")). The Court did not dispute these general principles, and agreed that certain amendments, if sufficiently material, could be considered simultaneous purchases and sales under Section 16(b). However, on the record before it, the Court found that an amendment to a repurchase agreement that reduced the number of shares to which the agreement applied and increased the per-share repurchase price, resulting in a decrease to Defendants' call equivalent position, comprised only a sale and not a purchase for Section 16(b) purposes. (Op. 20-25). In his reconsideration motion, Plaintiff changes tack: He argues that because Defendants were rational actors in their economic decisions, their decision to effect a partial termination of the Early Repo and reset the per-share repurchase price for the remaining shares at a higher number *could have*

5

*been* because they had access to inside information that suggested that the stock price would rise after December 21, 2018, and that such a possibility is sufficient to bring the partial termination transaction within the ambit of Section 16(b). (*See* Pl. Recon. Br. 6 ("If the Moyes, through their presumed access to inside information, had reason to believe that the market for Knight-Swift stock would rise following December 21, 2018, then their actions on that day were perfectly rational and could have been guided by inside information even if the exercise price of the option increased."); *id.* at 8 ("The hypothesis here is that the December 21, 2018, re-pricing of the Moyes' repo option could have been instructed by access to inside information concerning unannounced company developments that would propel the stock price upward. Proof of the actual employment of such information is no part of the inquiry. The empirical record of actual open market trading of those shares in the six months following the re-pricing validates that hypothesis and names the re-pricing a purchase."); *see also* Pl. Recon. Reply 2 ("The remedial statute applies because Defendants could have anticipated the movement in the stock price and could have negotiated the New Repo on the basis of that informed expectation.")).

There are legal reasons to reject Plaintiff's newly-minted *post hoc ergo propter hoc* theory of Section 16(b) liability. For starters, the argument runs counter to the very authorities that were cited by Plaintiff in his opposition to the motion to dismiss and considered by the Court in its decision. These authorities do not, as Plaintiff now invites the Court to do, compare price and volume trajectories over the relevant time period and reason from those

6

trajectories whether insiders *could* have had access to inside information. Rather, and in accordance with SEC regulations, courts treat the date of initial acquisition of a fixed-price derivative option, rather than the date of its exercise, as the "purchase" or "sale" date for purposes of Section 16(b), and only consider amendments to be simultaneous purchases and sales where "the changed terms … gave [the insiders] a greater opportunity to abuse inside information in short-swing trading at any time from acquisition … to maturity[.]" *Analytical Surveys*, 684 F.3d at 47-48.  The changed terms here were the reduction in the amount of shares, and a related increase in the per-share repurchase price.  The Court found in its September 30 Opinion that "the other terms of the Early Repo, including in particular its expiration date, remained the same," and, further, that "increasing the per-share exercise price could not be said to have afforded the Moyes Defendants 'a greater opportunity to abuse inside information in short-swing trading at any time from acquisition … to maturity,' as required under *Analytical Surveys*." (Op. 24-25). Nothing in Plaintiff's reconsideration submissions causes the Court to doubt the correctness of its prior decision.

The Court also rejects the broader implications of Plaintiff's argument. Taken to its logical conclusion, Plaintiff's argument suggests that *any* amendment to a fixed-price derivative option held by a company insider can result in a simultaneous purchase and sale, regardless of materiality, if the securities price goes up during the relevant time period.  Were that the law, however, there would be no need for Rule 16b-6, or for its attendant constructs

7

of "call equivalent positions" and "put equivalent positions."  In other words, the law presupposes a category of amendments that do not implicate Section 16(b) concerns, even if the share price later increases.  Plaintiff's argument would do away with that law.

Finally, the Court observes that Plaintiff's position suffers from factual, as well as legal, flaws.  As Defendants observe, the factual scenario conjured up by Plaintiff in his motion for reconsideration is "economically illogical." (Def. Recon. Opp. 2).  After all, if Defendants really had access to inside information suggesting that the price of Knight-Swift securities would rise after December 21, 2018, there would have been no reason to authorize CGMI to sell the 1,537,205 shares at a depressed price on that date (thereby causing a loss to Defendants), nor to amend the repurchase agreement to increase the per-share repurchase price of the remaining 3,331,003 shares (thereby reducing any possible future gains to Defendants).  In sum, Plaintiff pleaded a transaction that resulted in a decrease in Defendants' call equivalent position, *i.e.*, a sale with no corresponding purchase.  For all of these reasons, the Court denies Plaintiff's motion to reconsider its dismissal of Claim I.

**B.     The Court Denies Plaintiff's Motion for Leave to Amend**

**1.     Applicable Law**

Though he did not request such an opportunity in his opposition to the motion to dismiss (*see generally* Pl. Opp.), Plaintiff now requests leave "to amend his complaint to spread out the inferences he contends should properly be made in his favor," and thereby explicate his new theory of liability more

8

fully. (*See* Pl. Recon. Br. 9). "Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)). Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). That being said, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)); *see also Doninger* v. *Niehoff*, 642 F.3d 334, 357 (2d Cir. 2011) (noting that leave to amend may be denied because of "futility, bad faith, undue delay, or undue prejudice to the opposing party" (citation omitted)).

### 2. Analysis

Plaintiff's inclusion of a request for leave to amend further underscores the fact that his present arguments are not a proper basis for reconsideration. However, even under the more liberal standard of Rule 15, Plaintiff's request falls short. Plaintiff previously amended his complaint with the benefit of a pre-motion letter from the Moyes Defendants. (*See* Dkt. #19-20 (parties' pre-motion submissions), #25 (FAC)). He is not entitled to amendment by accretion. Moreover, as made clear by the preceding analysis, his proposed Second Amended Complaint advances a claim that cannot survive a Rule

12(b)(6) motion to dismiss. Accordingly, the Court finds that leave to amend would also be futile. *Cf. Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*." (alteration, footnote, and internal quotation marks omitted)); *Binn* v. *Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) ("To grant Plaintiffs leave to amend would be allowing them a 'third bite at the apple,' which courts in this district routinely deny." (collecting cases)), *report and recommendation adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020).

## CONCLUSION

For the reasons stated, the Court denies Plaintiff's motion for reconsideration and for leave to amend. The Clerk of Court is directed to terminate the motion at docket entry 47.

The parties are hereby ORDERED to confer and submit a proposed case management plan on or before **September 17, 2021**.

SO ORDERED.

Dated:  August 27, 2021
        New York, New York

*[signature: Katherine Polk Failla]*
_____
KATHERINE POLK FAILLA
United States District Judge